IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:08-CR-9-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| DARRYL HANDBERRY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter comes before the court on defendant's motion to suppress all evidence seized in connection with activities carried out by law enforcement officers at the defendant's residence in Washington, North Carolina, on April 9, 2007, including statements made by defendant and physical evidence. (DE # 35). On April 23, 2008, the government responded, and thereafter, on May 2, 2008, United States Magistrate Judge William A. Webb conducted hearing. He allowed parties until May 5, 2008, to supplement the record with further briefing. Thereafter, the magistrate judge entered memorandum and recommendation ("M&R") wherein he recommended that defendant's motion be denied in all respects, to which defendant herein objects. Accordingly, the issues raised are ripe for decision. For the reasons stated below, defendant's motion is denied.

STATEMENT OF THE CASE

On February 6, 2008, in an eight-count indictment, defendant was charged with the offenses of making a false statement; conspiracy to make false statements in connection with a firearms transaction; and possession and receipt of an unregistered firearm. The case, wherein the

government also proceeded against David Pierre (hereinafter "Pierre"), originally came before United States District Court Judge Terrence W. Boyle and later was reassigned to the undersigned.[1]

On May 6, 2008, upon consent, United States Magistrate Judge David W. Daniel approved the plea agreement between the government and Pierre. Two days later, the scheduling order establishing defendant's arraignment and trial date for July 7, 2008, issued.

## FINDINGS OF FACT

In his written objections to the M&R, defendant makes two objections to the magistrate judge's statement of the facts. First, defendant objects "to the finding of fact that states what the drug officers believed, without including other pertinent facts relating to their basis of belief." Second, defendant objects to the finding of fact "stating that the deputies did not search the residence prior to obtaining a search warrant." Defendant offers no further detail concerning the nature of these factual objections nor does defendant offer specific evidence contradicting those facts included in the magistrate judge's statement of facts. Now having carefully considered the magistrate judge's statement of the facts as well as the defendant's objections to that statement, the court makes the following findings of fact.

On March 27, 2007, the Beaufort County Sheriff's Department (hereinafter "Sheriff's Department") received information from a cooperating witness (hereinafter "CW") that the CW could buy cocaine and marijuana from a black male, later identified as Pierre on April 9, 2008. On the same day, CW met Pierre at the Clifton Park Apartments, which is located less than one-half of

---

[1] On February 22, 2008, the government filed a notice of related case, which explained that the above-captioned case includes allegations related to a case already then pending before the undersigned, United States v. Burgess, No. 4:07-CR-60-FL, where Burgess was charged with conspiring to straw purchase firearms for, among others, defendant Handberry. Burgess pled guilty, and the government asserted that it expects Burgess will be a witness at defendant Handberry's trial.

2

one mile from defendant's residence, 1124 Bonner Street, in Washington, North Carolina (hereinafter "the Bonner Street residence"). Defendant had been living at the Bonner Street residence for over three and one-half years. At this time, Pierre was also living at the residence. The CW purchased cocaine and marijuana from Pierre and another male individual in a green Jeep.

On March 29, 2007, CW again contacted Pierre and ordered a quantity of powder cocaine. Pierre directed CW to meet him in the immediate vicinity of the Bonner Street residence to accomplish the purchase. Again, on April 2, 2007, CW met Pierre in the immediate vicinity of the Bonner Street residence to make a cocaine purchase. The last purchase in this series occurred on April 9, 2007. Sheriff's Department officers observed Pierre leaving the Bonner Street residence, in a burgundy Pontiac car driven by a white female, later identified as Megan Midyette, immediately after CW placed the order via telephone to Pierre. Pierre did not stop at any other location at which he might have secured drugs to sale. On April 10, 2007, a Sheriff's Department investigator interviewed Midyette concerning her knowledge of Pierre and the events that occurred at the Bonner Street residence, and Midyette stated that she went to the went to the defendant's residence to purchase drugs. The green Jeep was located outside of the Bonner Street residence, which was the same Jeep used by Pierre and the individual male during the initial sale of drugs to CW. Sheriff's Department officials followed Pierre to the Clifton Park Apartments where the drug transaction occurred. Upon completion of the drug transaction, Pierre was detained and charged with several drug-related offenses.

A Sheriff's Department official immediately returned to the Bonner Street residence while Pierre was being detained. At evidentiary hearing, Lieutenant Russell Davenport (hereinafter "Davenport"), a narcotics investigator, stated that "they will destroy the evidence if you don't go

3

back to the place and secure it as soon as possible," and that it was a known practice to Sheriff's Department officials for drug dealers in certain neighborhoods to communicate with each other regarding police activity that occurs in the vicinity in order to preempt detection and seizure of their narcotics.[2] Within twenty (20) minutes of detaining Pierre, a Sheriff's Department official had returned to the Bonner Street residence, at approximately 5:10 p.m.

When officers arrived at the Bonner Street residence, they heard loud music, knocked on the door "a bunch of times," opened the unlocked door, and announced "Sheriff's Office" and entered. The officers saw defendant standing in the vicinity of the front door and smelled a strong marijuana odor. Defendant was ordered to position himself on the floor, and an officer then detained him. While defendant and another individual were being detained, a .40 caliber "Hi-Point" pistol was discovered in plain view in the vicinity of the two men.[3] Cocaine and marijuana were observed in plain view lying on a table. After being detained, defendant and the other individual entered other rooms in the residence in order to acquire their means of identification.

The Sheriff's Department officials did not search the house further at that time, but did ensure that no other occupants were in the house at that time by going, as Davenport recalled, "to the rooms [of the residence] to secure them to make sure no other occupants are in the house."[4] Davenport further stated that "We didn't want to collect any evidence until we had the search

---

[2] The magistrate judge presents more detailed information about this practice to which reference is made herein.

[3] The precise location of the pistol is contested. At the evidentiary hearing, Davenport testified on direct examination that "I rolled [defendant] over and to pat him down and there was a gun laying underneath his actual stomach, a pistol, a high point pistol." However, on cross-examination, when asked, "And you are not sure who you found the gun underneath?," Davenport admitted that, "I can't remember if it was Dentley or [defendant]." The investigation report prepared by the United States Department of Justice, Bureau of Alcohol, Firearms, and Explosives states, at paragraph five, that Sheriff's Department officials located the pistol "on the floor underneath DENTLEY."

[4] Davenport made this answer in response to the question "Now, other than going in and being in that general area, did anyone from the Sheriff's Department go to any other room in the residence?"

4

warrant." When Davenport was asked, "So at this point they [defendant and the other male individual found in the residence] are detained, and what do you do?" Davenport responded, "I actually leave from the residence and go apply for a search warrant." Defendant was then taken to a police vehicle outside of the residence and was told that the Sheriff's Department was then going to seek a search warrant for the residence.

Davenport returned to the Sheriff's Department and applied for and received a search warrant, signed at approximately 7:00 p.m. by a magistrate judge. The search warrant made reference to items Sheriff's Department officials saw in the Bonner Street residence. Sheriff's Department officials then executed the warrant and found certain evidence, including a sawed-off shotgun.

While the search was occurring, defendant, then located in a police vehicle, motioned for a Sheriff's Department official to approach the police vehicle as the official walked past the vehicle. The Sheriff's Department official testified that defendant inquired as to the status of the investigation and, after the official responded, "we're trying to figure out what the deal with the guns were," later admitted that he bought the shotgun discovered in the residence in the course of the search and made various other representations concerning the multifarious weapons found in the residence. The conversation took approximately twenty (20) to thirty (30) seconds.

## ANALYSIS

As noted, the magistrate judge recommends denying defendant's motion to suppress. Defendant, by contrast, seeks to suppress all of the evidence seized from his residence on April 9, 2007, under the theory that the law enforcement officers' warrantless entry into his home was *per se* unreasonable under the Fourth Amendment and that no exigent circumstances existed which

5

justify the warrantless entry. Defendant rejects the argument that Sheriff's Department officials reasonably entered the home in response to exigent circumstances, arguing that "no reasonable mind could conjure up exigent circumstances given the facts." Defendant, citing Vale v. Louisiana, 399 U.S. 30 (1970) (arrest on street outside of arrestee's house does not provide its own exigent circumstances so as to justify a warrantless search of the arrestee's house), objects to the argument, which he attributes to the government, that the arrest of Pierre, outside of defendant's residence, is sufficient to justify the warrantless entry into defendant's residence. In other words, defendant argues that Pierre's arrest does not give rise to the existence of exigent circumstances. Moreover, defendant objects that "there was insufficient basis for probable cause for a warrantless search of home." Finally, defendant argues that the independent source doctrine is inapplicable, and that all statements made by defendant should be suppressed as fruit of the poisonous tree.

A. Exigent Circumstances

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." United States Constitution amend. 4. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness' . . . ." Brigham City v. Stuart, 547 U.S. 398, 403 (2006).

Therefore, the warrant requirement is subject to certain exceptions. Flippo v. West Virginia, 528 U.S. 11, 13 (1999) (per curiam) ("A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement"). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 394 (1978). The

United States Court of Appeals for the Fourth Circuit holds that an exception to the warrant requirement exists "where police officers (1) have probable cause to believe that evidence of illegal activity is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant . . . ." U.S. v. Cephas, 254 F.3d 488, 494-95 (4th Cir. 2001).

Concerning the first prong, probable cause, which although it "resists an exacting definition," can be said to "exist[] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence the belief that contraband or evidence of a crime will be found in a particular place." United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (internal quotation omitted). "Because it is well settled that probable cause may be founded upon hearsay and information received from informants . . . , a judicial officer's assessment of probable cause based upon the totality of the circumstances must include a review of the veracity and basis of knowledge of persons supplying hearsay information." Id. (internal quotation omitted).

The government argues that it had probable cause to believe that illegal activity was occurring at the Bonner Street residence, based in part on the following facts. Sheriff's Department officials observed Pierre leaving the Bonner Street residence, where he was residing, less than one-half of one hour prior to securing the residence, in order to sell three-forths of an ounce of powder cocaine. Over a period of weeks in March and April, Sheriff's Department officials observed Pierre making drugs sales in close proximity to the Bonner Street residence. Finally, a green Jeep, parked in front of the residence, was the same green Jeep Pierre used to make his first controlled drug sale.[5]

These facts are sufficient to warrant an individual of reasonable prudence the belief that

---

[5] Moreover, the government argues that Midyette's statements, which were provided face-to-face, implicate her in criminal activity, and are corroborated by Pierre's previous drug sales and therefore are reliable, offer further justification for its decision on April 9, 2007.

contraband or evidence of a crime will be found in a particular place. Perez, 393 F.3d at 461. In addition to the arguments made by the government, the Sheriff's Department had conducted surveillance since March 27, 2007 on Pierre that revealed his participation in the trade of contraband. In the three instances prior to the April 9, 2007 arrest, this illegal trade occurred in the immediate vicinity of the Bonner Street residence. Based on the facts stated above, as well as for the reasons set forth in the M&R, the Sheriff Department officials had probable cause to conduct the warrantless search of the Bonner Street residence. Therefore, defendant's argument that the fruits of the search should be suppressed because warrantless searches are *per se* unreasonable fails.

Turning now to the second prong of the argument, namely, where probable cause to believe that illegal activity was afoot at the Bonner Street residence, whether exigent circumstances justified the warrantless entry. "It is well established that even when officers have probable cause to believe that contraband is present in a home, a warrantless search of the home is unlawful unless exigent circumstances exist at the time of entry." United States v. Mowatt, 513 F.3d 395, 400 (4th Cir. 2008). The Fourth Circuit has enumerated five factors that district courts should consider in determining whether an exigency existed at the time a search commenced:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that police are on their trail; and (5) the ready destructibility of the contraband.

United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981). In Turner, the court found that exigent circumstances, the arrest of an individual in close proximity to an apartment where drug operations were taking place, allowed for warrantless entry into the apartment. Id. Finding that "circumstances

8

beyond their [the officers'] control made it impractical for them to do so before entering the apartment" and finding that there was "a rational basis for their belief that" an individual in the apartment could have viewed the arrest and might destroy the "readily destructible" evidence, the district court's finding that warrantless entry was justified was "amply supported by the evidence." Id. at 528-29.

Here, due to the practice of drug dealers communicating with each other concerning arrests in the vicinity, the officers reasonably believed that the occupants of the Bonner Street residence would be alerted to the fact of Pierre's arrest prior to issuance of the search warrant and any contraband would be destroyed or removed. Therefore, exigent circumstances justified the Sheriff's Departments' entry and search into the Bonner Street residence. Accordingly, defendant's argument that the search violated the Fourth Amendment to the U.S. Constitution fails.

B. Independent Source Doctrine

As the magistrate makes clear in the M&R, even if the officers' warrantless entry into the defendant's residence had been unlawful, the evidence found therein would still be admissible pursuant to the independent source doctrine. The Fourth Amendment's exclusionary rule generally prohibits admission of evidence "that is acquired as a direct or indirect result of an illegal search unless the connection between the illegal search and the evidence has become so attenuated as to dissipate the taint." Mowatt, 513 F.3d at 403 (internal quotation omitted). Under the "independent source" doctrine, "when the police discover a particular fact by illegal means but later acquire knowledge of that same fact by independent, legitimate means, evidence of that fact is not excludable as fruit of the police misconduct." Mowatt, 513 U.S. at 404. In order to determine whether a search was "genuinely independent," the court should evaluate the affidavit absent the illegally obtained

Case 4:08-cr-00009-FL   Document 56   Filed 07/07/08   Page 9 of 11

information to assess whether the untainted portion of the affidavit set forth probable cause. United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993) ("[t]he inclusion of tainted evidence does not invalidate a search warrant if enough untainted evidence supports it . . . .").

Here, a sufficient amount of genuinely independent evidence, excluding observation of the cocaine, marijuana, digital scales, and the pistol that was in plain view at the time of the initial entry, supported the affidavit to render the evidence admissible under the independent source doctrine. This information included the surveillance the Sheriff's Department officials had been conducting on the Bonner Street residence, the fact that CW and Pierre had made several controlled drug transactions in close proximity to the residence, Pierre's and Midyette's arrests, and Midyette's later statements concerning her earlier desire to purchase marijuana from defendant's residence.

C. Defendant's Incriminating Statements

Finally, defendant asserts that all of the statements that he made to the police officers, while he was detained, are violative of his Fifth Amendment rights under Miranda v. Arizona, 384 U.S. 436 (1966) and that the statements should be suppressed because they were "another apple from the poisonous tree of the illegal search and seizure." As the magistrate judge held, this latter argument fails because the search was legal.

Concerning the Fifth Amendment argument, again as the magistrate judge held, the defendant initiated the conversation with the officer by motioning to him to approach the police vehicle and asking "what was going on?," and, where the officer's response came in this case as a response to a conversation initiated by defendant and was not designed to illicit an incriminating statement from defendant and was not the functional equivalent of an interrogation, defendant's statement is properly considered a "spontaneous" statement, made voluntarily. United States v. Williams, No.

10

Case 4:08-cr-00009-FL   Document 56   Filed 07/07/08   Page 10 of 11

information to assess whether the untainted portion of the affidavit set forth probable cause. United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993) ("[t]he inclusion of tainted evidence does not invalidate a search warrant if enough untainted evidence supports it . . . .").

Here, a sufficient amount of genuinely independent evidence, excluding observation of the cocaine, marijuana, digital scales, and the pistol that was in plain view at the time of the initial entry, supported the affidavit to render the evidence admissible under the independent source doctrine. This information included the surveillance the Sheriff's Department officials had been conducting on the Bonner Street residence, the fact that CW and Pierre had made several controlled drug transactions in close proximity to the residence, Pierre's and Midyette's arrests, and Midyette's later statements concerning her earlier desire to purchase marijuana from defendant's residence.

C. Defendant's Incriminating Statements

Finally, defendant asserts that all of the statements that he made to the police officers, while he was detained, are violative of his Fifth Amendment rights under Miranda v. Arizona, 384 U.S. 436 (1966) and that the statements should be suppressed because they were "another apple from the poisonous tree of the illegal search and seizure." As the magistrate judge held, this latter argument fails because the search was legal.

Concerning the Fifth Amendment argument, again as the magistrate judge held, the defendant initiated the conversation with the officer by motioning to him to approach the police vehicle and asking "what was going on?," and, where the officer's response came in this case as a response to a conversation initiated by defendant and was not designed to illicit an incriminating statement from defendant and was not the functional equivalent of an interrogation, defendant's statement is properly considered a "spontaneous" statement, made voluntarily. United States v. Williams, No.

99-4583, 2001 U.S. App. LEXIS 13296, at *4 (4th Cir. 2001) ("it is . . . well settled that spontaneous or volunteered statements that are not the product of interrogation or its functional equivalent are not barred by Miranda, even if the defendant is in custody when the statements are made") (citations omitted). See also United States v. Jackson, 863 F.2d 1168, 1172 (4th Cir. 1989) (officer's statement came only in response in conversation which defendant initiated and thus should not be construed as attempt to solicit information). Therefore, for these and the reasons set forth in the M&R, defendant's motion to suppress his statements is denied.

## CONCLUSION

For the reasons set forth above, the magistrate judge's recommendations are accepted and the defendant's motion to suppress (DE # 35) is DENIED.

SO ORDERED, this the 7th day of July, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge

11